IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SABRE R. GOODEN, | ) | |
| | ) | CIVIL ACTION FILE No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GOODR, INC., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## **COMPLAINT FOR DAMAGES**

COMES NOW, Sabre R. Gooden (hereinafter "Plaintiff" or "Ms. Gooden"), by and through her undersigned counsel, and files this, her Complaint for Damages, and shows the Court as follows:

## **INTRODUCTION**

1.

This action seeks declaratory relief, equitable relief, and damages for Defendant's violations of Plaintiff's rights pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 200e, *et seq.* (hereinafter "Title VII"), for subjecting her to sexual harassment and retaliation as well as for unpaid overtime wages pursuant to the Fair Labor Standards Act ("FLSA").

## ADMINISTRATIVE PROCEDURES

2.

Plaintiff has fulfilled all conditions necessary to proceed with this cause of action.   Plaintiff filed her Charge of Discrimination against Goodr Inc., on September 16, 2020. The EEOC issued its Notice of Right to Sue on September 1, 2022.

3.

Plaintiff timely files this action within ninety (90) days of receipt of the Notice of Right to Sue from the EEOC.

## JURISDITION AND VENUE

4.

Plaintiff invokes the jurisdiction of this court pursuant to 42 U.S.C. § 12101 et seq., 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 12117 and under Article III, § 2 of the United States Constitution, FLSA §16(b), 29 U.S.C. § 216(b), and 28 U.S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

5.

This case also seeks recovery for Plaintiff's wages under FLSA. Goodr Inc., leverages technology and logistics to reduce waste and eliminate hunger. It

employed Plaintiff as a "Do-Goodr" at the fulfillment center in Austell, GA from April 2020 through June 28, 2020. Throughout her employment, Goodr Inc., has failed to pay Plaintiff an overtime premium for work she performed in excess of 40 hours during each work week.

6.

This Court is an appropriate venue for all Plaintiff's claims under 28 U.S.C. § 1391(b), because Defendant resides within the Northern District of Georgia, and all or a substantial majority of the events giving rise to Plaintiff's claims occurred in the judicial district.

7.

At all material times (April 2020 – June 2020), Defendant was an enterprise subject to the FLSA's provision on overtime wages.

8.

At all times material hereto, Defendant was and is an enterprise covered by the FLSA pursuant to 29 U.S.C. § 203(s)(1)(A).

9.

At all times material hereto, Plaintiff was an "employee" of Defendant within the meaning of FLSA.

10.

At all times material hereto, Defendant was and continues to be an "employer" within the meaning of the FLSA.

11.

Based upon information and belief, the annual gross revenue of Defendant was in excess of $500,000.00 per annum during the relevant time period.

## THE PARTIES

12.

Ms. Gooden is a resident of Cobb County, Georgia and worked for the Defendant in Fulton County and submits herself to the jurisdiction of this Court.

13.

At all times relevant to this matter, Defendant Goodr employed Ms. Gooden as a Do-Goodr.

14.

Defendant Goodr, Inc., is a foreign, for-profit corporation licensed to do business within the State of Georgia, which has conducted business within Fulton County, Georgia at all times relevant to this matter.

15.

During all times relevant hereto, Defendant has employed fifteen (15) or more employees for the requisite duration under Title VII.

16.

Defendant Goodr, Inc., may be served through its Registered Agent Jasmine Crowe at 1000 Marietta Street NW, Suite 224, Atlanta, Georgia 30318.

17.

Upon information and belief, Defendant, Jasmine Crowe, is the CEO of a Goodr, Inc., a technology and logistics company with its principal office in Atlanta, Georgia.

18.

Upon information and belief, Jasmine Crowe, oversees the day-to-day operations of the business.  At all times material hereto, Jasmine Crowe regularly exercised the authority to: (a) hire and fire employees of Goodr, Inc.; (b) determine the work schedules for the employees of Goodr, Inc.; and (c) control the finances and operations of Goodr, Inc.

## **FACTUAL ALLEGATIONS**

19.

Goodr hired Ms. Gooden as a Do-Goodr on or about March 24, 2020.

20.

Ms. Gooden's job entailed unloading trucks, breaking down boxes and restocking items.

21.

On an average, Plaintiff worked 50 – 55 hours a week.

22.

Plaintiff performed well in role and had no complaints from Defendant.

23.

After Plaintiff started working for Defendant, her co-worker Jarvis began invading the Plaintiff's space and began subjecting Plaintiff to unwelcomed sexual advances, including solicitations, comments, and touching.

24.

Jarvis' sexual advances towards Plaintiff included, but were not limited to, soliciting her for a sexual relationship, touching her hair, lower back and her right calf.

25.

When this unwanted soliciting and touching happened in April of 2020, the Plaintiff immediately informed her immediate manager, Shenelle Mays Smith and it

was addressed in an upcoming lunch meeting by the owner Jasmine Crowe that same day.

26.

In the meeting, Jasmine Crowe made it clear that the workplace was to be full of respect towards co-workers and if she heard anything else about anyone violating the rules, the perpetrator would immediately be terminated.

27.

After that event, while on a work trip to New Orleans on or about May 22, 2020, while exiting from a social gathering with other coworkers, one of her co-workers Dre Kelly, grabbed her arm and asked the Plaintiff where she was going, and proceeded to pull the Plaintiff to dance in his lap.

28.

The Plaintiff pulled her arm away and immediately left the event.

29.

On or about May 23, 2020, upon returning to Atlanta, Dre Kelly, another one of the Plaintiff's co-workers began to make lewd statements about the Plaintiff's clothing and shoes how they looked and fit her body.

30.

The Plaintiff again reported this incident to her manager Jordan Johnson, but her complaints were ignored.

31.

Plaintiff called her sister to keep from having a breakdown on the job due to her managers repeatedly ignoring her.

32.

The lewd comments and sexual harassment by her co-workers, Dre Kelly and Jarvis occurred on a daily basis and the Plaintiff found herself going to the restroom frequently to call her sister to advise her what was going on due to her managers ignoring the Plaintiff.

33.

On or about June 8, 2020, the Plaintiff was in the gym and her co-worker Dre Kelly reached down and pinched the top of the Plaintiff's butt. The Plaintiff was scared, shocked, and embarrassed.

34.

The next day, on or about June 9, 2020, Dre Kelly did not come to work, and her other co-workers began to bully the Plaintiff, accusing the Plaintiff of having worn shorts for "Dre."  Which, the Plaintiff constantly had to deny, defend herself and ask them to stop making such remarks.

35.

On or about June 16, 2020, the Plaintiff again spoke to her immediate manager, Jordan Johnson about the continued harassment, and how it had gotten worse due to other co-workers making her feel uncomfortable.

36.

The Plaintiff again, advised her manager Jordan Johnson of what she was enduring while at work.

37.

Jordan failed to speak with the other employees that were sexually assaulting, and bullying the Plaintiff, nor did he report Plaintiffs complaints to human resources. Instead, Jordan Johnson told the Plaintiff that she needed to stand up for herself.

38.

The Plaintiff advised Jordan that she wanted him to handle the situation and talk with Dre Kelly and the other employees that were harassing her as he was the supervisor, and it was his responsibility.

39.

The Plaintiff again stressed that she was afraid to confront Dre and it was his responsibility as the supervisor to handle employee matters.

40.

On or about the morning of June 24, 2020, the Plaintiff brought snacks to the job and her co-worker Dre immediately said "Fuck Rose (Plaintiff's middle name), she know what it is" in front of all of her co-workers in the breakroom.

41.

The Plaintiff stood in shock and disbelief that her manager Jordan Johnson and supervisor Sydney Johnston didn't do anything to or come to her defense about the situation.

42.

The Plaintiff decided to continue to work after the comment was made and Dre came up behind her and began punching boxes to intimidate the Plaintiff.

43.

After Dre did this, the Plaintiff was unable to continue to work under the conditions and decided to talk to Sydney who was the manager over the drivers.

44.

On the same day of June 24, 2020, the Plaintiff asked Sydney if she could leave for the day as she felt drained of what had just happened.  Sydney suggested that they talk with the supervisor Jordan Johnson.

45.

The Plaintiff asked Mr. Johnson about leaving for the day and instead of granting the Plaintiff's request, immediately went to confront her co-worker Dre about the incident that happened in the breakroom that morning.

46.

Mr. Johnson walked outside and began talking with Dre about the situation in front of other co-workers and Dre then cut Mr. Johnson off and demanded that the Plaintiff speak for herself.

47.

While the meeting was going on outside, another co-worker Shenelle pulled up and jumped out of her car with aggression and demanded that the Plaintiff speak up for herself.

48.

The Plaintiff tried to respond but could not get a word in as everyone was shouting at the Plaintiff. The conversation escalated and both Dre and Shenelle were

yelling at the Plaintiff and the supervisor stood there without deescalating the situation.

49.

In fact, the co-workers insisted that the Plaintiff's brother-in-law, Brandon, who was already clocked out for the day come give his side of the story.

50.

Brandon declined as he didn't want to deal with the situation.

51.

When Brandon declined, Dre went to his car to get a gun and placed the gun in his left pocket.

52.

The supervisor at that point, jumped in front of Dre and told him to calm down and that it wasn't worth it.

53.

On or about June 28, 2020, the Plaintiff received a call from her manager Lynnette McKissick terminating the Plaintiff.

54.

Defendant terminated the Plaintiff instead of the employees that sexually harassed the Plaintiff.

55.

Goodr created a hostile work environment that Plaintiff was required to endure as a condition of her employment.

56.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text.

57.

Goodr undertook the above-pled conduct intentionally, willfully, and maliciously with no respect for Plaintiff and her federally-protected rights.

58.

Additionally, and/or in the alternative, Goodr undertook the above-pled conduct with reckless disregard for Plaintiff and her federally-protected rights.

**CLAIMS FOR RELIEF**

**COUNT I:**
**SEXUAL HARASSMENT IN VIOLATION OF TITLE VII**

59.

Plaintiff realleges the preceding paragraphs as if set forth fully herein.

60.

Defendant subjected Plaintiff to unwelcome sexual harassment.

61.

Plaintiff suffered a tangible employment action when Defendant when they terminated her employment.

62.

Defendant's actions constitute unlawful sexual harassment on the basis of Plaintiff's gender in violation of Title VII.

63.

Defendant willfully and wantonly disregarded Plaintiff's rights, and its discrimination against Plaintiff was undertaken in bad faith.

64.

The effect of the conduct complained of herein has been to deprive Plaintiff of an equal employment opportunity and to otherwise adversely affect her status as an employee because of her gender.

65.

As a direct and proximate result of all of Defendant's violation of Title VII, Plaintiff has suffered damages including, but not limited to, emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

## COUNT II:
## RETALIATION IN VIOLATION OF TITLE VII

66.

Plaintiff realleges the preceding paragraphs as if set forth fully herein.

67.

Plaintiff engaged in protected activity when she repeatedly reported to her managers and supervisors that she was being sexually harassed.

68.

Plaintiff suffered an adverse employment action when Defendant terminated her employment.

69.

Defendant terminated the Plaintiff's employment because she opposed and reported sexually harassing behavior.

70.

Defendant's conduct constitutes unlawful retaliation in violation of Title VII.

71.

As a direct and proximate result of Defendant's actions, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

## COUNT III:
## FLSA CLAIMS
## UNPAID OVERTIME FAILURE TO PAY

72.

Plaintiff realleges the preceding paragraphs as if set forth fully herein.

73.

Plaintiff, worked as "Do-Goodr" for Defendant and performed related activities (i.e. unloading trucks, break-down of boxes and restocking of items and supplies ordered by Defendant's customers in the vicinity of their base location).

74.

Plaintiff, worked at the fulfillment center for Defendant in the United States.

75.

Plaintiff worked in this capacity from approximately April, 2020 through June 28, 2020.

76.

Plaintiff was paid hourly compensation in exchange for work performed without regard to the number of hours actually worked.

77.

Specifically, Plaintiff was paid a $15.00 an hour when she worked on behalf

of the Defendant.

78.

Plaintiff routinely worked in excess of forty (40) hours per week as part of her regular job duties.

79.

Plaintiff estimates that she typically worked approximately fifty (50 - 65) hours each week, or ten (10) to (15) hours of overtime.

80.

Despite working more than forty (40) hours per week, Defendant failed to pay Plaintiff overtime compensation at a rate of no less than time and one half their regular rate of pay for all hours worked over forty in a workweek.

81.

Do-Gooders (including Plaintiff) were required to report to their designated locations in the morning where they received daily assignments and necessary orders to be delivered for the day.

82.

Plaintiff and the class members were assigned schedules by supervisors.

83.

Plaintiff did not make deliveries outside the state of Georgia.

17

84.

Plaintiff was an "employee" of Defendant within the meaning of FLSA.

85.

Defendant knew or should have known of Plaintiff's schedule and hours worked each week.

86.

Plaintiff is eligible to be paid overtime pay at time and one half their regular rate.

87.

Plaintiff has not been compensated at time-and- one-half for all hours worked in excess of forty (40) hours in a workweek.

88.

Due to this pay policy or practice by the Defendant, Plaintiff was never paid overtime compensation for any of the overtime hours worked.

89.

Upon information and belief, the records, to the extent any exist, concerning the number of hours worked and amounts paid to Plaintiff are in the possession and custody of the Defendant.

90.

Defendant's failure and/or refusal to properly compensate Plaintiff at the rates and amounts required by the FLSA were willful.

91.

Plaintiff complained to Defendant regarding how she was paid.

92.

Defendant did not investigate Plaintiff's claims.

93.

Because Defendant refused to correct the manner in which Plaintiff is paid, Plaintiff is owed overtime pay for all hours worked over 40 hours per week for the past two (2) years.

## COUNT IV RETALIATION AGAINST DEFENDANT GOODR, INC.

94.

Plaintiff realleges the preceding paragraphs as if set forth fully herein.

95.

Plaintiff, Sabre Gooden, worked for Defendant at various times from April 2020 to June 2020 as a Do-Goodr for Defendant.

96.

Plaintiff was not properly compensated at the statutory rate of one and one-half times her regular rate of pay for the hours worked in excess of forty (40) hours each workweek.

97.

Plaintiff is entitled to be paid at the statutory rate of overtime calculation for those hours worked in excess of forty (40) hours.

98.

At all times material hereto, Defendant failed, and continues to fail, to maintain proper time records as mandated by the FLSA.

99.

Defendant's actions were willful and/or showed reckless disregard for the provisions of the FLSA as evidenced by its failure to compensate Plaintiff for overtime for all hours worked in excess of forty (40) hours per weeks when they knew, or should have known, such was, and is due.

100.

Defendant failed to properly disclose or apprise Plaintiff of her rights under the FLSA.

101.

Due to the intentional, willful, and unlawful acts of Defendant, Plaintiff

suffered and continues to suffer damages and lost compensation for time worked over forty (40) hours per week, plus liquidated damages.

102.

Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. §216(b).

103.

At all times material hereto, Defendant failed to comply with Title 29 and United States Department of Labor Regulations, 29 C.F.R. §§516.2 and 516.4, with respect to the Plaintiff by virtue of the management policy, plan, or decision that intentionally provided for the compensation of less than time- and-one-half for overtime hours worked.

104.

Based upon information and belief, Plaintiff was not paid proper overtime for hours worked in excess of forty (40) in one or more workweeks, because Defendant failed to properly pay proper overtime wages.

105.

Defendant violated Title 29 U.S.C. §207 for the relevant period of time in that:

a.      Plaintiff worked in excess of forty (40) hours per week for the

period of employment with Defendant;

       b.     No payments, and provisions for payment, have been made by Defendant to properly compensate Plaintiff at the statutory rate of one and one-half times their regular rate for those hours worked in excess of forty (40) hours per work week as provided by the FLSA; and

       c.     Defendant failed to maintain proper time records as mandated by the FLSA.

106.

Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

(a)    a declaratory judgment that Defendant violated the Plaintiff's rights under Title VII;

(b)    an injunction prohibiting Defendant from engaging in such unlawful conduct in the future;

(c)    full back pay from the date of Plaintiff's constructive discharge, taking into account all raises to which Plaintiff would have been entitled but for her unlawful constructive termination, and all fringe benefits of employment, with prejudgment interest thereon;

(d)      reinstatement of Plaintiff's employment or in the alternative, front pay to compensate Plaintiff for her lost future wages and benefits;

(e)      compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's emotional distress, inconvenience, humiliation, loss of enjoyment of life and special damages, past and future;

(f)      punitive damages in an amount to be determined by the enlightened conscience of the jury to be sufficient to punish Defendant for its conduct towards Plaintiff and deter them from similar willful, wanton, oppressive, malicious, and/or grossly negligent conduct in the future;

(g)      special damages for all out of pocket costs and expenses Plaintiff would have incurred but for Defendant's unlawful discriminatory conduct;

(h)      payment to her and all class members of overtime wages for all hours worked in excess of forty (40) hours per work week at the correct rate pursuant to the FLSA;

(i)      Reasonable attorney fees and expenses of litigation;

(j)      Trial by jury as to all issues;

(k)      Prejudgment interest at the rate allowed by law;

(l)      All other relief to which she may be entitled;

Respectfully submitted this 29th day of November, 2022.

**THE LEACH FIRM, P.A.**

*/s/Adeash Lakraj*_____
Adeash A.J. Lakraj
GA Bar No. 444848
631 S. Orlando Ave, Suite 300
Wells Fargo Building
Winter Park, FL 32789
Telephone: 770.728.8478
Facsimile: 833.423.5864
Email: alakraj@theleachfirm.com